IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| USAA CASUALTY INSURANCE COMPANY a/s/o DEBRA LINN, | ) ) ) | |
|---|---|---|
| | ) | No. 3:24-cv-00964 |
| Plaintiff, | ) ) | |
| vs. | ) ) | Judge Eli J. Richardson |
| | ) | Magistrate Judge Barbara D. Holmes |
| UPONOR, INC., | ) ) | |
| Defendant. | ) ) | |

## DEFENDANT UPONOR, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OR, ALTERNATIVELY, TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, Uponor, Inc. ("Uponor"), pursuant to Tenn. R. Civ. P. 12.02(6), along with the Federal Arbitration Act ("FAA"), submits this Memorandum in Support of its Motion to Compel Arbitration or, Alternatively to Dismiss Plaintiff's First Amended Complaint ("FAC").

### I.     INTRODUCTION

Plaintiff's claims are governed by a written warranty ("Warranty") which requires the parties to arbitrate the claims. Plaintiff must concede that the Warranty applies to the claims before the Court since Plaintiff submitted a claim to Uponor to recover under the Warranty. (Beissel Dec. ¶10). Separate and apart from the Warranty requiring arbitration, Plaintiff's claims cannot survive Fed. R. Civ. P. 12(b)(6) because: (1) the only plausibly alleged damage was to the property itself, so Plaintiff's alleged tort claims are barred by the economic loss rule; (2) Plaintiff fails to plead facts which plausibly demonstrate causation – an indispensable element in all of Plaintiff's claims; and (3) Plaintiff's claims for breach of implied warranty are barred because they were filed more than four (4) years after the product was installed. Accordingly, Uponor contends that the Court

must either (i) compel the parties to arbitration to address any of Plaintiff's viable causes of action or (ii) dismiss the FAC for failure to state a claim upon which relief can be granted.

II.     **ALLEGATIONS OF THE FAC**

Plaintiff alleges that Debra Linn ("Linn") owned a home in Nashville ("Property"), (FAC ¶7), which "utilized a recirculating hot water system" which incorporated cross-linked polyethylene, ("PEX"), tubing manufactured and sold by Uponor. (FAC. ¶ 8). Plaintiff contends that the PEX circulated "water throughout the home to provide water service to appliances and plumbing applications." (FAC. ¶ 8).

Linn discovered "water damage on the flooring" on June 25, 2023. (FAC. ¶ 10). Plaintiff contends that water emanated "from a longitudinal split" in the PEX beneath the floor of the Property. (FAC. ¶ 11). Without identifying any key facts substantiating its supposition, Plaintiff alleges on "information and belief" that the "longitudinal split" in the PEX tubing was "caused by a brittle failure of the tubing material due to oxidation when exposed to the water supply." (FAC. ¶ 12). Plaintiff contends that the discharge of water caused unspecified damages to Linn's home. (FAC. ¶ 14). As a result, Linn allegedly incurred expense for unspecified "mitigation of water damage." (FAC. ¶ 15). Plaintiff further contends that Linn "*may have* sustained damage to her personal property and/or fixtures kept in the dwelling", (FAC. ¶ 16; emphasis added), and "*may have*" incurred "allowable living expenses" for food and lodging while the home "*may have been* in an uninhabitable state". (FAC. ¶ 17; emphasis added). Plaintiff paid Linn $99,463.89 inclusive of the deductible, pursuant to Linn's insurance policy. Plaintiff asserts four causes of action: Strict Liability (Count 1), Negligence (Count 2), Products Liability (Count 3), and "Breach of Warranty" (Count 4). In Count 4, Plaintiff alleges a "breach of the implied warranty for merchantability and

fitness for a particular purpose ...." (FAC. ¶ 36). Plaintiff does not allege a cause of action for express warranty.

In making the foregoing allegations, Plaintiff omits the fact that it made a claim ("Claim", Beissel Dec. ¶10) under Uponor's limited written Warranty ("Warranty", Beissel Dec., Ex. 1). As Plaintiff must concede by virtue of the Claim it submitted, the Uponor PEX allegedly installed in the Property is subject to, and governed by, the Warranty that, among other things, contains the following mandatory arbitration provision covering any and all claims and disputes between Uponor and Plaintiff as to the PEX:

> **Warranty Claim Dispute Process:**
>
> In the event claimant and Uponor are unable to resolve a claim through informal means, the parties shall submit the dispute to the American Arbitration Association or its successor (the "Association") for arbitration, and any arbitration proceedings shall be conducted before a single arbitrator in the Minneapolis, Minnesota metropolitan area. NOTWITHSTANDING THE FOREGOING, NEITHER THE CLAIMANT NOR UPONOR, INC. SHALL BE ENTITLED TO ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS, AND NEITHER THE CLAIMANT NOR UPONOR SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS WITH ANY OTHER PARTIES IN ARBITRATION OR IN LITIGATION BY CLASS ACTION OR OTHERWISE.

(Beissel Decl., Ex. 1 at p. 2, "Warranty Claim Dispute Process"). The Warranty also expressly disclaims all other warranties, express and implied:

> THIS LIMITED WARRANTY IS THE FULL EXTENT OF EXPRESS WARRANTIES PROVIDED BY UPONOR, AND UPONOR HEREBY DISCLAIMS ANY WARRANTY NOT EXPRESSLY PROVIDED HEREIN, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE PRODUCTS COVERED HEREUNDER.

(*Id.* p. 2, "Miscellaneous"). In the FAC, Plaintiff does not state the year when the Uponor PEX was allegedly installed in the Property. However, it cannot be undisputed that the date stamp on the PEX tubing itself, which Plaintiff contends was installed in the home reflects that the PEX was manufactured on March 26, 2013. (Beissel Decl., ¶ 11).

## III. ARGUMENT REGARDING ARBITRATION

### A. Legal Standard

The Amended Complaint fails for a myriad of reasons, beginning with the Warranty applicable to, and governing, the PEX allegedly installed in Plaintiff's Property. That Warranty mandates the arbitration of all claims between Plaintiff and Uponor related to the PEX.

Both the FAA and Tennessee law reflect a strong public policy supporting arbitration as a means of settling differences and thereby avoiding litigation, in accordance with ordinary contract principles. *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 497-99 (6th Cir. 2004); *see also Morgan Keegan & Co., Inc. v. Smythe*, 401 S.W.3d 595, 603 (Tenn. 2013) (describing arbitration agreements in private contracts as "now favored in Tennessee both by statute and existing caselaw"). Thus, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Cooper*, 367 F.3d at 499. In particular, the FAA – which governs disputes involving interstate commerce and applies here since Uponor is an Illinois corporation with its principal place of business in Minnesota, [Doc. 5, Uponor Corporate Disclosure] – "leaves no place for the exercise of discretion" and "instead mandates that" courts "shall direct the parties to proceed to arbitration on issues as to which" an agreement to arbitrate exists. *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011).

As such, under the FAA, courts must determine: (1) whether a valid agreement to arbitrate exists and, if it does; (2) whether the agreement encompasses the dispute at issue. *Anderson v. Amazon.com, Inc.*, 478 F. Supp. 3d 683, 691 (M.D. Tenn. 2020). If the response is affirmative on both counts, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms. *Id.* Consistent with these governing rules, the Court here must compel arbitration because a valid agreement to arbitrate exists covering Plaintiff's claims in this action.

### B. Plaintiff is Bound by the Warranty's Arbitration Provision

The Warranty binds "the owner[s] of the applicable real property" involved in this matter. (*See* Beissel Decl., Ex. 1 at p. 1). That includes the agreement to arbitrate contained in the Warranty. (*Id.*, at p. 2, "Warranty Claim Dispute Process"). The PEX at issue in this litigation was manufactured on March 26, 2013. (Beissel Decl. ¶11). All PEX sold by Uponor in the United States between October 15, 2012 and the present is subject to and governed by Uponor's limited warranty, including the PEX that was allegedly installed in Plaintiff's Property. (Beissel Decl. ¶¶5,11, Ex. 1). During that same period of time, the Warranty was continuously published and publicly available on Uponor's website. (*Id.* ¶ 6); *see also Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 756 (N.D. Cal. 2019) (buyers were charged with notice of, and bound by, limitations contained in a warranty that was publicly available on the defendant's website). Thus, Plaintiff is legally and contractually bound by its terms, including its mandatory arbitration provision. *See Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) ("non-signatories may be bound to an arbitration agreement under ordinary contract and agency principle," including under third-party beneficiary and assignment theories) (citing *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir.1990)).

First, Plaintiff is a beneficiary of the Warranty since both Uponor and the contractor who installed the PEX for Ms. Linn clearly understood and intended for the Warranty to transfer and inure to the benefit of Ms. Linn, as the purported owner of the subject home, after its construction. The Warranty's plain language makes clear that it was intended to cover and govern homeowners who purchase real property from builders responsible for the initial installation of the PEX. Specifically, the Warranty contemplates and expressly provides that it may be transferred and assigned by the "original owner" of the real property to a new owner within 10 years after

installation. (Beissel Decl. ¶ 7 and Ex. 1 at p. 2, "Transferability"). Consistent with that plain language, Uponor understands and intends that its Warranty will ultimately cover, and inure to the benefit of, owners who acquire homes containing PEX from builders. (*Id.* ¶¶ 8-9). It also is axiomatic that builders intend for the PEX Warranty to benefit subsequent home purchasers/owners – indeed, this very business model is predicated on building and then selling homes, together with all installed components and their corresponding warranties, such as PEX pipes. Under these circumstances, Plaintiff is a third-party beneficiary of the Warranty,[1] and Tennessee law is clear that "an arbitration provision in a contract is enforceable against a third-party beneficiary who has filed a cause of action seeking to enforce a contract." *Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 616 (Tenn. 2004) (an arbitration provision in a contract is applicable to actions brought by a third-party beneficiary of the contract containing the arbitration agreement); see also *Swift Enter., LLC v. Trunorth Warranty Plans of N. Am., LLC*, 2022 U.S. Dist. LEXIS 240986, at *24 (E.D. Tenn. Sept. 30, 2022) (compelling third-party beneficiary to arbitrate because its claims could not "reasonably [be] construe[d] . . . as anything other than an attempt to recover amounts allegedly owing under the terms of the warranties."). Here, Plaintiff's claims related to the PEX seek recovery for nothing more than the PEX's supposed failure to perform as warranted. Thus, holding Plaintiff to the Warranty's arbitration clause is manifestly appropriate and required under Tennessee law.

---

[1] *Owner-Operator Indep. Drivers Ass'n v. Concord Efs*, 59 S.W.3d 63, 70 (Tenn. 2001) ("A third party is an intended third-party beneficiary of a contract, and thus is entitled to enforce the contract's terms, if (1) The parties to the contract have not otherwise agreed; (2) Recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties; and (3) The terms of the contract or the circumstances surrounding performance indicate that either: (a) the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the beneficiary; or (b) the promisee intends to give the beneficiary the benefit of the promised performance.").

Second, Plaintiff alleges claims for breach of implied warranty which legally and factually requires, and thus necessarily presumes, contractual privity between Plaintiff and Uponor. (Compl. at ¶¶ 86-90). *Americoach Tours, Inc. v. Detroit Diesel Corp.*, No. 04-2016 B/V, 2005 WL 2335369, at *8 (W.D. Tenn. Sept. 23, 2005) ("The Court has found no opinion in which a Tennessee court has held that in the absence of privity a plaintiff could bring a claim for breach of an implied warranty to recover only economic damages"). Likewise, Plaintiff submitted a claim to Uponor for recovery under the Warranty, thus admitting contractual privity. (Beissel Decl. ¶10-11). By asserting a claim requiring contractual privity and by further asserting claims arising out of the contractual relationship, Plaintiff must be deemed contractually bound by the Warranty applicable to the PEX. *See Benton*, 137 S.W.3d at 618.

Third, it is the regular practice of contractors to assign the warranties of products incorporated into homes to the home owners – including product, material, and component warranties – as part of the completion of the delivery of the home from the builder to the owner of the home. Accordingly, Plaintiff is also bound by the Warranty as an assignee of that document. *See, e.g., Martin v. Cavalry SPV I, LLC*, 2014 U.S. Dist. LEXIS 43293, at *22-23 (E.D. Ky. Mar. 31, 2014) ("despite the fact that Cavalry is a non-signatory to the original agreement, courts have allowed similar arbitration agreements to be enforced by or against a non-signatory when the non-signatory succeeded to the rights and obligations of the signatory assignor."); *Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671-72 (Tenn. 2013) ("Generally, contractual rights can be assigned" where an agreement contains no limitation on the rights of either party to assign the agreement).

### C. The Warranty's Arbitration Provision Covers Plaintiff's Claims

The Warranty's broad arbitration provision plainly covers and requires arbitration of Plaintiff's claims in this action on an individual basis. In determining whether claims are covered by an arbitration clause, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Thus "where [a] contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986). Consistent with this law, the Court must find in the instant case that the Warranty covers Plaintiff's claims, all of which exclusively arise out of and concern the performance of the PEX allegedly installed in the Property.

Here, the Uponor Warranty provides that if Uponor and a property owner cannot informally resolve any dispute regarding an Uponor product (including PEX), then such dispute, or "any other claim or dispute between the parties in any way regarding the design, manufacture, sale, distribution or condition of any product, whether such claim or dispute is based on contract, warranty, tort or otherwise," are subject to arbitration, and the owner and Uponor "must arbitrate any and all claims which in any way relate to Uponor's products . . . whether based on contract, warranty, tort, or otherwise." (Beissel Decl., Ex. 1 at pp. 1-2 (emphasis added)). This plain language encompasses, and mandates the arbitration of, Plaintiff's alleged claims against Uponor, all of which relate to the design, manufacture, condition, and performance of PEX allegedly sold by Uponor and installed in the Property. That is particularly true where the Warranty provides an owner's "exclusive remedies" with respect to products sold by Uponor that have allegedly 'failed"

or are "defective." (*Id.* at p. 1). To that end, the Warranty's arbitration provision does not exclude any claims from its ambit, and the Warranty instead broadly governs "any claims arising from breach of contract, breach of warranty, tort, or any other claim arising from the sale or use of Uponor's products. (*Id.* at p. 2, "Miscellaneous"); *Anderson*, 478 F. Supp. 3d at 699 (reviewing whether an arbitration agreement encompasses a dispute by reading the terms of the agreement).

When presented with similar arbitration clauses, courts in the Sixth Circuit have compelled arbitration. *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (when faced with a broad arbitration clause, such as one covering any dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration). Accordingly, the Court must compel arbitration in this case.

## IV. ALTERNATIVE ARGUMENTS SUPPORTING MOTION TO DISMISS

### A. The Economic Loss Rule Bars Plaintiff's Cause of Action in Tort

Dismissal of Plaintiff's claims for strict liability and negligence is also mandated for the independently dispositive reason that they are barred by Tennessee's economic loss rule, which forbids tort claims that exclusively seek to recover damages based upon a product allegedly failing to perform as expected, absent any actual damage to a person or property **other than** the supposedly defective product itself.

The economic loss doctrine "precludes recovery in tort when a product damages itself without causing personal injury or damage to other property." *See Lincoln*, 293 S.W.3d at 489-93 (adopting standard set forth in *East River*, 476 U.S. at 868-71 (1986)). The lynchpin for defining "the product" is whether the allegedly defective item is part of an integrated package. *Americoach Tours, Inc.*, 2005 WL 2335369, at *3; *East River*, 476 U.S. at 870. If so, then damage to another part of the integrated package is treated as damage to "the product itself" and cannot be recovered

via a tort claim. *See, e.g.*, *Americoach Tours*, 2005 WL 2335369, at *3 (economic loss rule barred a plaintiff from seeking tort damages against manufacturer of electrical components installed in a bus that was destroyed by a faulty heater because "the entire bus," which was "assembled . . . from component parts," was "the product itself"; and (ii) "all electrical or mechanical components of the heater were 'supplied . . . as part of an integrated package . . . properly regarded as a single unit.'"); *Tenn. Farmers Mut. Ins. Co.*, 2002 Tenn. App. LEXIS 429, at *14-20 (recognizing that "[w]hen the unit is damaged by a defective part, the result is economic loss" that cannot be recovered in tort, and holding that economic loss doctrine precluded recovery in tort for vehicle destroyed by defective component part because the entire vehicle "constituted 'the product itself'"). A contrary approach would eviscerate "the distinction between warranty and strict products liability." *East River*, 476 U.S. at 867-68.

Consistent with these principles, the Sixth Circuit has adopted the *East River* approach, applied the economic loss rule in construction defect cases and held that: (1) a defective component or material installed in a structure constitutes only one part of an integrated product (namely, the structure itself); and therefore (2) a defective component or material does not cause damage to "other property" simply because it damages other portions of the structure. *See Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 850 (6th Cir. 2002) (holding under Kentucky's economic loss doctrine that the wood used in a nursing home was not the "product," and instead, the "entire nursing home" was the product for the purpose of the economic loss rule).[2]

---

[2] Kentucky's and Tennessee's economic loss rules are substantially identical. *Compare Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 738 (Ky. 2011) (adopting the *East River* holding regarding the applicability of the economic loss doctrine); *with Lincoln*, 293 S.W.3d at 489-93 (adopting same standard under Tennessee law).

Several other courts addressing the issue have reached the same conclusion in the construction defect context.[3]

Here – in contravention of this law – Plaintiff asserts claims for strict liability, product liability, negligence, and breach of implied warranty against Uponor based on allegations that the Property's plumbing system was constructed using supposedly defective PEX which was installed in the Property which has purportedly caused damage to various other parts of the Property. However, the Property constitutes a single integrated "product" purchased by Plaintiff's subrogor, and as a matter of law, any damage to various aspects of the Property **cannot** satisfy the "other property" exception to the economic loss rule. Review of the FAC's allegations of damages is instructive. Plaintiff alleges that "Ms. Linn's home sustained damage" (FAC ¶14), and that she incurred "expense for mitigation of water damage". (FAC ¶15). These allegations plainly address

---

[3] *See, e.g., Ass'n of Apt. Owners v. Venture 15, Inc.*, 115 Haw. 232, 285-297 (2007) (holding that economic loss rule barred condominium association's tort claim against subcontractor who manufactured property's concrete floor slabs where the slabs allegedly caused damage to floor tiling, walls, door jambs and windows); *Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors*, 659 A.2d 267, 271 (Me. 1995) ("Whether a product has injured only itself may, of course, be a difficult question to answer. We follow the approach taken by those courts when considering facts analogous to those before us, and look to the product purchased by the plaintiff, as opposed to the product sold by the defendant, to determine whether a product has injured only itself. The plaintiffs here purchased finished condominium units, not individual components of the units. Because the windows were integrated into the finished product purchased by the plaintiffs, the damages caused by any defects in the windows [to the structure] constituted damage only to the product itself, not damage to 'other property.' Plaintiff's claim for economic damages . . . are properly addressable under a warranty theory." (citations omitted)); *Wash. Courte Condo. Ass'n-Four v. Wash.-Golf Corp.*, 150 Ill. App. 3d 681, 686-687 (1986) (economic loss rule barred tort claims for damages to insulation, walls, ceiling, floors, and electrical outlets resulting from supposedly defective windows and sliding glass doors); *Bay Breeze Condo. Ass'n v. Norco Windows*, 257 Wis. 2d 511, 527-528 (Ct. App. 2002) ("We hold that the economic loss doctrine applies to building construction defects when, as here, the defective product is a component part of an integrated structure or finished product" because "component parts that cause damage to an integrated product [such as a structure] [] result[] in only economic loss" – thus, "[a]lthough the condominium units may have suffered incidental damage as a result of the failed windows, this does not take a commercial dispute outside the economic loss doctrine.").

damage to the Property itself, which is barred by the economic loss rule. Plaintiff also alleges that Ms. Linn "**may have** sustained damage to her personal property and/or fixtures kept in the dwelling", (FAC ¶16; emphasis added), but that allegation does not meet the plausibility threshold of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully.") By alleging that the damage to personal property "may have" occurred, Plaintiff has alleged no more than a "sheer possibility", which is plainly insufficient to survive Fed.R.Civ.P. 12(b)(6). *See Hickman v. State Farm Prop. & Cas. Ins. Co.*, No. 3:17-CV-00184-CRS, 2017 WL 5892212, at *4 (W.D. Ky. Nov. 29, 2017), ("Plaintiffs' proposed amended complaint states, 'That in connection with the aforesaid claim, State Farm **made or may have made** additional defamatory statements concerning one or more plaintiffs, as discovery will reveal.' ... This allegation is insufficient to withstand a motion to dismiss because it is not 'plausible on its face....'" (emphasis added)); *Iskander v. F.B.I.*, No. 4:12CV02653, 2013 WL 1572439, at *8 (N.D. Ohio Apr. 12, 2013, ("A claim which merely suggests the possibility that the Defendant may have wronged the Plaintiff does not state a claim upon which relief may be granted...." (citing *Iqbal*, 556 U.S. at 678)).

Thus, Plaintiff's tort-based construction defect claims are precisely the type of claim the economic loss rule forbids, especially where Plaintiff does not allege any personal injury caused by the PEX.

**B. The Court Should Dismiss Plaintiff's Claims Because It Fails to Adequately Plead Causation**

The Court should also dismiss Plaintiff's claims for strict liability, product liability, and negligence because Plaintiff has failed to adequately plead causation in support of these claims. Causation is a necessary element in strict liability just as it is in a "negligence" claim. *Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 704 (Tenn. 2011) (causation is an essential element of any

products liability action); *Parsons v. Wilson Cnty.*, No. M201400521COAR3CV, 2015 WL 5178601, at *5 (Tenn. Ct. App. Sept. 3, 2015) (to prevail in a negligence action, plaintiff must establish causation in fact as well as proximate cause).

In disregard of this fundamental pleading requirement, the FAC impermissibly speculates on "information and belief" that the "longitudinal split" in the PEX tubing was "caused by a brittle failure of the tubing material due to oxidation when exposed to the water supply." (FAC. ¶ 12). The Court cannot credit Plaintiff's speculative conclusions and unsupported theory of causation, even at the pleading stage. *Tilden v. Gen. Elec. Co.*, No. 3:11-CV-628, 2012 WL 1023617, at *5 (E.D. Tenn. Mar. 26, 2012) (dismissing complaint where there were no facts permitting the court to infer a causal connection between the alleged defect and the alleged injury).

This is particularly true because the Supreme Court has made clear that "[t]he plausibility standard . . . asks for more than a sheer possibility" of liability[,] and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Tilden*, 2012 WL 1023617, at *1. Indeed, courts within the Sixth Circuit agree that factual allegations that are merely consistent with a defendant's liability do not satisfy the pleading standard, "as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief." *JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, 615 F. Supp. 3d 750, 759 (M.D. Tenn. 2022).

Accordingly, Plaintiff's bare speculation that the alleged damage was "caused by a brittle failure of the tubing material due to oxidation when exposed to the water supply" is patently incapable of sustaining the FAC's strict liability and negligence claims, as Plaintiff fails to even account for – let alone plead facts excluding – obvious alternative explanations for the purported

leak, such as faulty installation of the PEX during the construction process, operational conditions beyond the design parameters of the PEX, as well as the mean/methods used to disinfect the PEX after installation and before being placed into service. *Maness v. Bos. Sci.*, 751 F. Supp. 2d 962, 969 (E.D. Tenn. 2010) (granting motion to dismiss and noting that the fact that plaintiff allegedly suffered an injury from the device does not show that the device was defective); *King v. Danek Med., Inc.*, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000) (recognizing that "the failure or malfunction of the device, without more, will not make the defendant liable") (citing *Harwell v. Am. Med. Sys., Inc.*, 803 F.Supp. 1287, 1298 (M.D.Tenn.1992)); *Allen v. Am. Med. Sys., Inc.*, 1989 WL 105626 (Tenn. Ct. App. Sept. 15, 1989) (declining to find liability based upon the fact that the device did not function).

### C. The Implied Warranty Claim is Barred by the Warranty and is Untimely

The written Warranty governing the PEX expressly disclaims the implied warranties of merchantability and fitness. This alone bars Plaintiff's implied warranty claims. *See* Tenn. Code Ann. § 47-2-316 (parties can exclude or modify the implied warranty of merchantability).

Moreover, claims for breach of implied warranty are governed by a four-year statute of limitations pursuant to Tenn. Code Ann § 47-2-725(1), and "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Tenn. Code Ann § 47-2-725(1) (emphasis added). The breach of warranty occurs when tender of delivery is made." *Id.* (emphasis added). There is no allegation in the FAC as to the date on which the PEX was installed, but it was manufactured on **March 26, 2013.** Plaintiff therefore impermissibly asks the Court to make the implausible leap that the PEX was somehow installed more than seven (7) years after that PEX was manufactured. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). Any suggestion that the PEX was manufactured in 2013 but not installed until 2020 is, in sum, not "plausible on its face." Because Plaintiff failed to file this action until more than ten years after the PEX was manufactured, its implied warranty claims are facially untimely as a matter of law, such that they must be dismissed.

## V.     CONCLUSION

For each of the foregoing reasons, the Court should: (i) grant Uponor's Motion, and (ii) enter an Order: either (a) compelling the parties to address any viable claims of Plaintiff through individual arbitration or (b) dismissing the FAC and dismissing Uponor from this action with prejudice.

Respectfully Submitted:

/s/ M. Andrew Pippenger
M. Andrew Pippenger (Tenn. BPR No. 018183)
PURYEAR PIPPENGER & COOK PLLC
104 Woodmont Blvd, Suite 201
Nashville, TN 37205
Tel: (423) 521-1201
Fax: (615) 630-6602
apippenger@ppclaw.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

      I, the undersigned attorney, do hereby certify that on August 13, 2024 the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF filing system which automatically sends email notifications of such filing to the following attorneys of record:

Joseph B. Baker, TN BPR 28046
McDonald Kuhn, PLLC
5400 Poplar Avenue, Suite 330
Memphis, TN 38119
(901) 526-0606
jbaker@mckuhn.com

*Attorneys for Plaintiff*

                                                      /s/ M. Andrew Pippenger
                                                         M. Andrew Pippenger